IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA J. PORCH, ) | |
| Plaintiff, ) | |
| ) | No. 06 C 6322 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| JOHN E. POTTER, Postmaster ) | |
| General, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maria Porch ("Plaintiff") is suing Defendant John E. Potter, Postmaster General of the United States ("Defendant"), for disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. Plaintiff alleges one count of discrimination under each Act and one count of retaliation under each Act for a total of four counts in her First Amended Complaint (the "Complaint"). Before this Court now is Defendant's Motion for Summary Judgment made pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's motion is GRANTED.

### I. UNDISPUTED FACTUAL BACKGROUND

At all times relevant, Plaintiff was a United States Postal Service ("USPS") mail processing clerk. She began working for the USPS in 1984. In 2005, at the time of the events giving rise to her discharge, Plaintiff held a limited duty position at the "Nixie table." Plaintiff's Nixie assignment involved sitting at a table and repairing pieces of torn mail at her own pace. This limited duty was extremely light work and did not require lifting any item weighing more than five pounds. Plaintiff worked on the Nixie table because she suffered an on-the-job injury in 2002. On January 27, 2005, Plaintiff claimed she suffered another on-the-job injury.

1

According to Plaintiff, while using the toilet and pulling on the toilet paper, a plastic toilet-paper-dispenser cover popped open and struck her on the right side of her head and shoulder. Plaintiff's supervisor inspected the dispenser and found the dispenser to be intact. A USPS physician examined Plaintiff, noted that she complained of a headache and numbness in her ear, but found no bruising or swelling on the head or shoulder and concluded that the headache was unrelated to the toilet paper dispenser incident.

For most of the following month, however, Plaintiff did not come to work. She submitted documents from a Dr. Saloman claiming that she was "totally incapacitated" as a result of the toilet paper dispenser injury and depression. She also filed a workers compensation claim asserting that she was entitled to be paid for the time she was not working. Plaintiff supported her claim with notes from her doctor stating that she was "totally incapacitated" due to her injury. During the period of time Plaintiff was not reporting to work because of her injury, surveillance conducted by the Postal Inspection Service ("PIS") showed her driving, shopping and spending four hours at a beauty salon. The PIS also discovered that Plaintiff attended classes at Devry University during the time period she claimed she was unable to work.

On March 7, 2005, Manager of Distribution Operations Anthony Teemer ("Teemer") placed Plaintiff on emergency suspension based on what he believed to have been worker's compensation fraud. On March 18, 2005, the PIS issued its formal report in which it concluded Plaintiff was performing activities inconsistent with her claimed medical restrictions. The report detailed Plaintiff's claim that she was totally unable to work from January 28, 2005 through February 16, 2005, and also February 18 and 19, 2005, due to her alleged injury from the toilet paper dispenser. On April 6, 2005, Teemer issued Plaintiff a notice that she would be removed from the USPS because of her fraudulent behavior in claiming compensation for being unable to

work when she was found engaging in activities that indicate she could perform her duties at the USPS. Plaintiff responded by filing a union grievance to challenge her suspension as well as her termination. The USPS settled the grievance related to the emergency suspension on February 1, 2006, and agreed to rescind the suspension notice and compensate Plaintiff for wages lost from March 9, 2005, to May 14, 2005, the effective date of her termination. Prior to an arbitration hearing, the USPS unilaterally reduced Plaintiff's punishment from termination to a long term suspension to last from May 14, 2005, to February 12, 2006. However, Plaintiff persisted with her grievance and on February 27, 2006, an arbitrator found that Teemer had "just cause" for the decision to remove Porch based on her engagement in activities that were inconsistent with being "totally disabled" due to her alleged injuries to her head and shoulder on January 27, 2005.

Meanwhile, in May 2005, Plaintiff notified the Equal Employment Opportunity Commission ("EEOC") that her removal was caused by race, disability and retaliation for prior EEOC activity. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and on October 17, 2006, an ALJ granted summary judgment for the USPS. The ALJ found that Plaintiff failed to present any evidence to rebut or to cast doubt on Teemer's rationale for his decisions. The ALJ wrote "[f]rom Teemer's point of view, Plaintiff requested Continuation Of Pay for an alleged on-the-job injury on January 27, 2005, that prevented her from sitting at a table and repairing torn pieces of mail at her own pace. Yet, during the time that she was absent from work with pay, Plaintiff was observed performing activities that demonstrated that she could have performed her limited duty. Based on these facts, the Agency is entitled to summary judgment." (Decision of ALJ at 18-19.)

At her deposition Plaintiff testified that her mental condition today is substantially the same as in 2005. When asked how depression has limited her, Plaintiff testified that she is

3

limited in her ability to enjoy life and socialize and that she sometimes just wants to stay in the house and do nothing and cry. When asked at deposition what alleged EEOC activity she claims prompted the USPS's retaliation, Plaintiff testified "I don't remember the years but I have filed several EEOs and grievances."

## II.     STANDARD OF DECISION

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252; *see also Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). This standard of review is applied to employment discrimination cases with "added rigor." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

## III.    DISCUSSION

Plaintiff is a federal employee and as such, her remedies for discrimination lie under the Rehabilitation Act, not the ADA. *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005); see *also*

4

42 U.S.C. § 12111(5)(B). Therefore, Counts I and III, alleging retaliation and discrimination under the ADA respectively, are hereby dismissed for failure to state claims upon which relief may be granted.

**Discrimination**

Claims of disability discrimination made under the Rehabilitation Act are subject to the same analyses as those made under the ADA. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). Here, Plaintiff does not attempt to establish her claim directly. However, a plaintiff may also establish a discrimination claim indirectly; through the familiar *McDonnell-Douglas* framework. To do so, the plaintiff first sets out a *prima facie* case of discrimination by showing: (1) she is disabled under the statutory definition, (2) she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) she has suffered an adverse employment action due to her disability.

Defendant first contends that summary judgment is warranted because Plaintiff has not established that she is disabled within the meaning of the statute. One is disabled under the Rehabilitation Act if one suffers from "a physical or mental impairment that substantially limits one or more of such person's major life activities, has a record of such impairment, or is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). When determining whether a litigant's impairment limits major life activities of central importance to most people's daily lives, the United States Supreme Court and the Seventh Circuit have referenced activities contained in the Code of Federal Regulation, as well as other examples. *Bragdon v. Abbott*, 524 U.S. 624, 639 (1998); *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006). Those activities include caring for oneself, walking, hearing, learning, eating, sleeping, speaking, breathing,

5

engaging in sexual reproduction, performing manual tasks and working.  *Bragdon*, 524 U.S. at 639; *Scheerer*, 443 F.3d at 919; 45 C.F.R. § 84.3(j)(2)(ii); 28 C.F.R. § 41.31(b)(2).

Plaintiff contends that her disability at issue in this case is major depression and that the adverse employment actions she suffered due to her disability are 1) termination and 2) placement in restricted duty in the Nixie Unit.[1]  "[M]ajor depression may or may not give rise to a substantial limitation on a major life activity, depending on its severity." *Cassimy v. Bd. of Educ. of Rockford Public Schools, Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006).  As to her depression, the only admissible materials submitted by the Plaintiff that describe how her depression affects her ability to perform major life activities are her own statements made during her deposition.  When asked how depression has affected her, Plaintiff testified that she is limited in her ability to "enjoy life" and "socialize with friends or go places with her daughter" and that she "just wants to stay in the house, not do nothing, cry."  Plaintiff has not testified, or submitted any physician statements that state, she cannot care for herself, walk, hear, learn, eat, sleep, speak, breath, reproduce, or perform manual tasks.  Of course she cannot claim so either, since there is ample evidence that she was engaging in several of those major life activities at a time where her physician documented that she was "totally incapacitated" and could not perform her job.

Plaintiff, with the help of her readily accommodating physician, Dr. Saloman, attempted to spin her condition into one that only manifests itself as an inability to work when she is at

---

[1] However, in the Complaint, Plaintiff explains that her placement on modified light duty (restricted duty in the Nixie Unit) was an accommodation for her impairments. (First Amended Complaint, ¶ 11.)  It is inconsistent for Plaintiff to argue that the same action can be an accommodation and an act of discrimination at the same time, especially given that her disability documentation provides that placement in a quiet, stress-free, isolated working environment is to her benefit.

work.  Indeed, in support of his characterization of Plaintiff's condition as "totally incapacitated," Dr. Saloman wrote as follows:

> When somebody is totally incapacitated I understand life goes on.  It does not mean they have to stay in bed all the time but they do have to make certain medical appointments and have to take care of certain functions of their family and personal hygiene. Total incapacity is the inability of rendering any useful service for the United States Postal Service.

(Letter of Dr. Saloman to the United States Department of Labor, March 28, 2005.)  Thus, Dr. Saloman alludes to the fact that Plaintiff's impairment does not limit her ability to perform certain major life activities, with the notable exception of working, which is only limited to the extent she is forced to work at the USPS.

"To survive summary judgment, the plaintiff must provide specific facts establishing that there is a genuine issue of material fact as to whether he is substantially limited in a major life activity.  Specific facts are required; conclusory allegations will not do." *Scheerer*, 443 F.3d at 919.   Plaintiff has not pointed to any specific facts from which a reasonable factfinder could conclude her depression and concomitant symptoms prevent or severely restrict her performance of the variety of tasks that are of "central importance to most people's daily lives." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).  Therefore, this Court concludes that despite her documented impairment, Plaintiff is not disabled within the meaning of the Rehabilitation Act.  Plaintiff has also failed to produce evidence that the Defendant perceived her to be disabled within the meaning of that term in the statute.  Having failed to satisfy the first requirement of the *prima facie* claim, there is no need to proceed further in the analysis.  *See e.g. Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944 (7th Cir. 2000).  Defendant is entitled to summary judgment on Count IV of the First Amended Complaint.

**Retaliation**

Unlike a discrimination claim, a claim of retaliation under the Rehabilitation Act does not require that a plaintiff demonstrate she is actually disabled. Section 504 of the Rehabilitation Act, at 29 U.S.C. § 794(d), expressly incorporates the anti-retaliation provision of Section 503 of the ADA, 42 U.S.C. § 12203, prohibiting retaliation against "any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Id*.

In order to succeed on a retaliation claim under Section 504, a plaintiff must establish that: (1) she engaged in a statutorily-protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two events. *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). Plaintiff satisfies the first prong of the analysis because she can show that she complained of discrimination to the EEOC. Plaintiff also satisfies the second prong of the analysis because Plaintiff pleaded in the First Amended Complaint that she was discharged in response to filing EEOC complaints, which would obviously qualify as an adverse employment action. That the Defendant reversed his decision to terminate her and instead opted to subject Plaintiff to a severe suspension does not moot the claim because a suspension still qualifies as an adverse employment action. *See e.g. Kolupa v. Roselle Park District*, 483 F.3d 713, 714 (7th Cir. 2006) (explaining that a mere warning could constitute an adverse employment). The question in this case is whether Plaintiff can satisfy the third prong of the analysis.

To support a direct claim of retaliation, a plaintiff must be able to establish a causal connection between her engaging in statutorily protected activity and her adverse employment

decision.² *Burks*, 464 F.3d at 758. Plaintiff states that she has filed several EEO grievances over the years. On or about January 12, 2005, Plaintiff filed EEO complaint No. 4J-600-0018-05 alleging discrimination based on her disability and retaliation in connection with the USPS management's conduct relating to the request to update medical records. Her employment with the USPS was terminated when she received a Notice of Removal dated April 6, 2005 to be effective May 14, 2005. On or about May 20, 2005, Plaintiff filed a second EEO complaint, under Case No. 1J-601-0013-05 (the "Appealed EEO Case"), alleging that her termination was the result of discrimination based on disability and was the result of retaliation for past EEO activity.

Defendant contends that Plaintiff has subjected to termination, later reduced to suspension, not because of any past EEO grievances she filed, but rather because in Defendant's opinion, Plaintiff engaged in workers' compensation fraud by claiming to be totally incapacitated and unable to work when she was in fact not so limited. On the one hand, only one factual element supports the existence of a causal link in this case; the fact that Plaintiff was terminated after having filed EEO grievances.³ The Seventh Circuit has unambiguously held that temporal proximity alone is not dispositive of a causal link and that "suspicious timing may permit a plaintiff to survive summary judgment if there is other evidence that supports the inference of a causal link." *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005). While on the other

---

² Plaintiff cannot possibly establish an indirect claim of retaliation, which requires showing (1) she engaged in statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity," *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (citing *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005)), because she has presented no facts addressed to the second and fourth prongs.

³ Had she included it as a fact in her summary judgment statement of additional facts instead of as an allegation in the complaint, the Court would have viewed the fact that supervisors referred to her as a troublemaker as somewhat supportive of a causal link.

9

hand, several factual elements demonstrate that Plaintiff's adverse employment action was due to her engaging in activities inconsistent with her claimed disability.

First, Defendant's documentation indicates it took action against Plaintiff for compensation fraud. The USPS investigators recorded Plaintiff engaging in daily activities such as driving and attending school while she was supposedly totally incapacitated. An arbitrator decided that Plaintiff's termination for committing acts inconsistent with claims of total incapacity was justified. An ALJ granted summary judgment for the USPS on Plaintiff's EEO charges that her removal was caused by race, disability and retaliation for prior EEO activity. The ALJ specifically found that Plaintiff failed to present any evidence to rebut or to cast doubt on Teemer's rationale for his decisions. "From Teemer's point of view, Plaintiff requested COP [continuation of pay] for an alleged on-the-job injury on January 27, 2005, that prevented her from sitting at a table and repairing torn pieces of mail at her own pace. Yet, during the time that she was absent from work with pay, Plaintiff was observed performing activities that demonstrated that she could have performed her limited duty. Based on these facts, the Agency is entitled to summary judgment." Furthermore, Plaintiff argues that she has filed EEO charges in the past throughout her decade's long career with the USPS. Yet, despite this fact, Defendant only took the action of terminating/suspending her after this 2005 incident. Had Defendant took action against Plaintiff for engaging in prior EEOC activity, it is much more likely than not it would have retaliated before 2005.[4]

Given the facts present in these summary judgment proceedings, it is fairly obvious that no reasonable factfinder could conclude that Plaintiff's prior unspecified EEOC activity was the sole or substantial cause of her termination/suspension. Plaintiff has not submitted any facts that

---

[4] It may be worth mentioning again that the Plaintiff has not submitted any evidence of when this prior EEOC activity took place.

10

discredit or call into question Teemer's motivation in first terminating, then suspending Plaintiff for engaging in what he believed to be worker compensation fraud. Therefore, Defendant is granted summary judgment as to Count II of the Complaint.

## IV. CONCLUSION

In Conclusion, for the foregoing reasons, Counts I and III are dismissed because they are claims upon which relief can not be granted. Summary judgment is granted to Defendant on Counts II and IV of the Complaint. Civil case is hereby terminated and all other pending motions are moot and terminated.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **September 10, 2008**